**Robert B. NIXON and Myrene K. Nixon, for themselves and all others similarly situated, Plaintiffs and Appellants,**

v.

**AMERICAN SAVINGS & LOAN ASSOCIATION, Defendant and Respondent.**

No. 17210.

Supreme Court of Utah.

July 16, 1981.

Robert J. DeBry, Salt Lake City, for plaintiffs and appellants.

Kent H. Murdock, Alma H. Boyce, Salt Lake City, for defendant and respondent.

HOWE, Justice:

This is an appeal from a summary judgment in favor of the defendant in a suit brought by plaintiffs to recover interest on a reserve account held by defendant in connection with a real estate loan it had made to plaintiffs.

In 1977 the plaintiffs borrowed money from the defendant to purchase a home, securing the loan by a trust deed on the property. The trust deed required the plaintiffs to make monthly deposits into a reserve account held by the defendant to cover property taxes, insurance premiums and other miscellaneous charges. No interest has ever been paid by the defendant on the amount in the reserve account.

Plaintiffs commenced this action to recover interest at 4% per annum on all amounts deposited by them into said account after June 30, 1979. No claim is made for interest prior to that date. The plaintiffs' case is based upon the enactment of Senate Bill 85 by the 1979 Legislature, effective July 1, 1979, and codified as § 7–17–3 and § 7–17–4, U.C.A. 1953, as amended, as follows:

7–17–3.

(1) Each lender requiring the establishment or continuance of a reserve account in connection with an existing or future real estate loan shall pay interest on funds deposited in the account after June 30, 1979 of at least 4% simple interest per annum . . .

7–17–4.

(1) A lender not requiring the establishment and maintenance of a reserve account shall offer the borrower the following options:

(a) The borrower may elect to maintain a non-interest-bearing reserve account to be serviced by the lender at no charge to the borrower; or

(b) The borrower may manage the payment of insurance premiums, taxes and other charges for his own account.

(2) The lender shall give written notice of the option to the borrower; (i) With respect to real estate loans existing on the effective date by notice mailed not more than 30 days after the effective date; (ii) With respect to real estate loans made on or after the effective date by notice given at or prior to the closing of the loan. The notice shall clearly describe the options and state that a reserve account is not required by the lender, that the borrower is legally responsible for the payment of taxes, insurance premiums and other charges and that the notice is being given pursuant to this act. For real estate loans in existence on the effective date the borrower must select one of the options prior to 60 days after the effective date. If no option is selected prior to 60 days after the effective date the borrower will be deemed to have selected option (a), provided, however, that the borrower at a later time may select option (b). For

loans made on or after the effective date the borrower shall select one of the options at the closing. If the borrower selects option (a), the lender shall not be required to account for earnings, if any, on the account.

(3) . . .

Pursuant to § 7–17–4, the defendant sent to the plaintiffs in July of 1979 the following letter:

*Notice to Borrower*

*Relating to Reserve Account*

This notice is given pursuant to S.B. 85, Utah State Legislature 1979 General Session.

A reserve account for payment of taxes, insurance premiums and other charges relating to the real property securing the loan is NOT required on your loan.

As the borrower, you are legally responsible to (sic) payment of taxes, insurance premiums, and other charges.

To accomplish this, you may elect either of the following options:

   a. You may elect to maintain a noninterest bearing reserve account to be serviced by lender at no charge to you

OR

   b. You may manage the payment of insurance premiums, taxes and other charges relating to the real property securing the loan for your own account.

You have until August 30, 1979, to notify us which option you select. In the event you do not notify us by that date, we will assume that you elect to continue to maintain a non-interest bearing reserve account to be serviced at no charge to you.

   Lender
   American Savings & Loan Association
   1255 Brickyard Road
   Salt Lake City, Utah 84106

The plaintiffs made no response to that letter but have continued to make monthly payments to the reserve account. Defendant has not paid plaintiffs any interest on that account and they have brought this suit claiming 4% interest on the deposits made to their account since July 1, 1979, basing that claim solely upon the provisions of § 7–17–3, supra.

The main question for our determination is whether § 7–17–3 requires the payment of interest on deposits made after June 30 to a reserve account which the lender had required to be established prior to that date.

Plaintiffs interpret § 7–17–3 to mean that the defendant must pay interest if it *has required* the "establishment or continuance" of the reserve account, and since plaintiffs were required to establish the reserve account when the loan was made in 1977, the statute is fully satisfied. It makes no difference, they argue, that the defendant does not now require the "continuance" of the reserve account.

Plaintiffs' interpretation overlooks the use of the word "requiring" in § 7–17–3. That word is of the present tense and refers to the time of and after the effective date of the act. It is therefore immaterial whether the reserve account was required prior to the effective date of the act. What is controlling is whether the reserve account is required after the effective date. The plain meaning of the language is that lenders must pay interest on the funds in reserve accounts (1) if they require borrowers to continue to maintain reserve accounts on existing loans made prior to June 30th, or (2) if they require borrowers to establish reserve accounts on new loans made after June 30th.

Having determined that it would no longer require plaintiffs to maintain a reserve account, the defendant within 30 days after the effective date of the act, gave the plaintiffs proper written notice of that fact and spelled out their options under § 7–17–4. Those options were that the plaintiffs could keep the reserve account with the defendant at no charge to them but without interest, or the plaintiffs could manage their own payment of insurance premiums, taxes and other charges. The notice was well written, clear and fully conformed to the

statute in every respect. The plaintiffs made no response to the letter and under § 7–17–4(2)(ii) they were deemed to have selected to continue the reserve account without interest and without charge to them.

Contrary to the assertions of the plaintiffs, it is evident that it was the legislative intent to give to lenders of existing real estate loans the option of determining during the month of July 1979 whether they would require the continuation of a reserve account, and if the decision was made to require it, then 4% interest had to be paid. It clearly did not lock lenders into the payment of interest under existing loans. As heretofore mentioned, the defendant promptly followed the statutory procedure in making its election by mailing out the required notice during July. The termination of the requirement of a reserve account was also authorized by the trust deed which allowed the lender to waive in writing its continuation.

The plaintiffs have referred us to several statements made on the floor of both Houses of the Legislature by the author of the bill and the chairman of the committee to which such bill was referred. In those statements plaintiffs find comfort for their position that it was the legislative intent to require interest to be paid on all loans where a reserve account had been initially required and which was still being maintained as of July 1, 1979. Without here deciding what efficacy, if any, we should accord to the individual pronouncements of legislators, we have examined those statements and it appears that all of them were predicated upon the assumed fact that the lender would require the continuation of the escrow account after July 1st. With that background it is understandable that their statements would contain assurances that interest would be paid on existing loans after July 1, 1979.

Plaintiffs point out that § 7–17–4(1) is worded in the conjunctive as follows: "A lender not requiring the establishment *and* maintenance of a reserve account shall offer the borrower the following options:" (Italics added) and argue that the defendant can avoid liability to pay interest only if it did not require the "establishment" of the reserve account *and* if it does not now require the "continuance" of the reserve account. Plaintiffs observe that while the defendant no longer requires the "maintenance" of the reserve account, it did require the "establishment" of that reserve account when the loan was made, and therefore, defendant cannot satisfy both requirements of the statute to exempt itself from payment of interest.

In answering this contention, we again stress that the Legislature used the word "requiring" which is of the present tense and refers to the time of the effective date of the act and thereafter. Reading the statute with that in mind the defendant lender as of July 1st and thereafter, was not "requiring the establishment and maintenance" of a reserve account by the plaintiffs. The defendant therefore qualifies for the exemption from the payment of interest afforded by § 7–17–4.[1]

1. While it is not necessary to our opinion, we note as an aside that the Legislature apparently made an error in the wording of § 7–17–4(1) in its use of the conjunctive "and." In order for that sentence to be consistent with § 7–17–3(1), the disjunctive "or" apparently should have been used. With that change § 7–17–4(1) would read: "A lender not requiring the establishment *or* maintenance of a reserve account shall offer the borrower the following options:". As we have noted above, the word "establishment" of a reserve account refers to an account set up in connection with a new loan and "maintenance" of a reserve account refers to an account already set up in connection with an existing loan. In either case the lender was given the option to exempt itself from the payment of interest by following the procedures set forth in § 7–17–4(2). Therefore, the use of the disjunctive "or" would have been proper. See IA, Sands, Sutherland Statutory Construction, sec. 21.14 (4th ed. 1972), where it is stated that there has been so great laxity in the use of the terms "or" and "and" in legislation that courts have generally said that the words are interchangeable and one may be substituted for the other if to do so is consistent with the legislative intent, citing many cases.

Plaintiffs next contend that since the letter sent by the defendant to the plaintiffs was not sent until after July 1st, defendant had the legal obligation to pay interest on deposits to the reserve account for the period of time after July 1st, but before said letter was received by the plaintiffs. That is an erroneous interpretation. The legislative intent was to give lenders the entire month of July to make their election on existing loans and to notify their borrowers of their decision. It clearly was not intended that lenders would be obligated to pay interest during that thirty day period which they were given to make that election except that if a lender chose to require the continuance of a reserve account, it would be obligated to pay interest from July 1st on deposits made on or after that date. However, if the lender chose not to require the continuation of a reserve account, as the defendant decided in this case, no interest would be payable.

The judgment below is affirmed. Costs are awarded to the defendant.

HALL, C. J., and STEWART and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.